**Richard ATWOOD, Plaintiff–Appellant,**

v.

**NEWMONT GOLD CO., INC., a Delaware corporation, Defendant–Appellee.**

**No. 93–15811.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1994.

Decided Jan. 18, 1995.

---

3. The defendants advised the district court that     they revised the policies in their post-trial brief.

Carl M. Hebert, Reno, NV, for plaintiff-appellant.

Glenn H. Schlabs, Sherman & Howard, Colorado Springs, CO, for defendant-appellee.

Before: WALLACE, Chief Judge, and PREGERSON and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Plaintiff Richard Atwood appeals from the district court's grant of summary judgment in favor of defendant Newmont Gold Co. ("Newmont") on Atwood's Employment Retirement Income Security Act ("ERISA") action alleging that he was wrongfully denied severance pay under the company's employee benefit plan. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

### I

Atwood was first employed by Newmont as its central shop foreman in 1988. His duties included supervising four foremen and their crews, drafting budgets, interviewing and hiring employees, and planning and overseeing engineering projects. In November of 1990, Atwood was reassigned to a position as a senior engineer. His superior told him that this was a lateral transfer and not a demotion. His salary and grade level were unchanged. Then, in mid-April 1991, Atwood was again reassigned, this time to a position as line foreman of the newly created second shift at Newmont's central shop. He supervised employees in this position, and was responsible for the operation of the shop during the shift. His salary and grade level were again unchanged.

On July 31, 1991, Atwood left a resignation letter on his supervisor's desk. The letter is dated August 1, 1991, states that Atwood's resignation will be effective on August 15, and requests severance pay. There are two Newmont severance pay plans which could govern Atwood's resignation. The first is a plan dated February 1989. The other went into effect on August 1, 1991. Both plans deny severance pay to an employee who voluntarily terminates employment, unless the resignation follows a "significant diminution in duties or responsibilities." The plans differ only in certain language regarding the discretion retained by Newmont in determining eligibility. (The difference does not affect the result here. See section III.A., *infra.*)

Dan Scartezina, a Newmont employee, denied Atwood's request for severance pay. Atwood's counsel then wrote to Newmont reiterating Atwood's demand for severance pay. This letter was referred to Don Miller, a Newmont vice president, who treated the letter as an appeal from Scartezina's decision. Miller conducted an investigation, concluded that Atwood's last position as second shift foreman did not entail substantially less responsibility than Atwood's previous assignments and denied severance benefits. Atwood then commenced this action under 29 U.S.C. § 1132(a)(1)(B).

### II

The district court had jurisdiction pursuant to 29 U.S.C. § 1132(e)(1). We have jurisdiction under 28 U.S.C. § 1291. We review a grant of summary judgment *de novo. Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994).

### III

The parties fiercely dispute the correct standard of review to be applied in reviewing Newmont's denial of benefits to Atwood. At-

wood argues that the district court should have reviewed Newmont's interpretation of the plan *de novo*. The district court determined that both versions of the plan reserved to Newmont the discretion to interpret the term at issue, and therefore applied an abuse of discretion standard. The district court correctly determined that the plan vests the administrator with discretion.

### A

■ A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case an abuse of discretion standard is applied. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989).[1]

### 1

Atwood first argues that the February 1989 plan applies to his case, and that that plan does not give the administrator discretion in determining whether a termination is involuntary. The determination of which plan applies is irrelevant; both give the administrator discretion.[2]

■ Section 2 of the February 1989 plan defines eligibility for severance benefits. Subsection 2.1 states that an employee who is involuntarily terminated shall be eligible for benefits, and defines involuntary termination to include resignation following a substantial diminution in duties or responsibilities. Subsection 2.2 states that an employee who is terminated for cause shall not be eligible for severance benefits, and defines "cause." Subsection 2.3 states that "[Newmont] shall be the sole and exclusive judge as to whether or not a termination is qualified for benefits under the terms of this Plan." This is suffi-

cient to vest Newmont with discretion as to all terminations defined by the plan. *See Eley v. Boeing Co.*, 945 F.2d 276, 278 (9th Cir.1991).

### 2

■ Atwood's next argument in favor of *de novo* review is that Newmont's Summary Plan Description ("SPD") does not state that Newmont has discretion in this situation, and that the SPD should control. We disagree. This is not a situation where the SPD failed to describe accurately the circumstances or actions which could affect an employee's eligibility for benefits.

■ ERISA requires that the SPD explain the "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). Where the SPD fails to meet this requirement and differs materially from the terms of the plan, the SPD is controlling. *See Arnold v. Arrow Transp. Co.*, 926 F.2d 782, 785 n. 3 (9th Cir.1991) (citing cases).

We have interpreted § 1022(b) to mean that the SPD "must be specific enough to enable the ordinary employee to sense when there is a danger that benefits could be lost or diminished." *Stahl v. Tony's Bldg. Materials, Inc.*, 875 F.2d 1404, 1408 (9th Cir.1989). The language of the SPD in this case amply informed Atwood that there was a danger that he would be ineligible for severance benefits if he resigned. The omission of the plan language placing the determination in the discretion of Newmont does not undermine this conclusion. "The plan's rules should be explained [in the SPD] to permit the ordinary employee to recognize that certain *events* or *actions* could trigger a loss of benefits." *Id.* (emphasis added). The provision at issue has no bearing on the *events* or

---

**1.** Some of our cases state that an "arbitrary and capricious" standard is applied, while others use the term "abuse of discretion." *Compare Eley v. Boeing Co.*, 945 F.2d 276, 278–79 (9th Cir.1991) ("abuse of discretion") *with Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 894 (9th Cir.1990) ("arbitrary and capricious"). The standards differ in name only. *See Barnett v. Kaiser Found. Health Plan, Inc.*, 32 F.3d 413, 415

(9th Cir.1994). In *Firestone*, the Supreme Court focused on whether the administrator had "discretionary authority." 489 U.S. at 115, 109 S.Ct. at 956. We will therefore use the "abuse of discretion" terminology as well.

**2.** Atwood concedes that Newmont has discretion if the August 1991 plan applies.

*actions* determinative of eligibility under the plan.

The SPD for Newmont's plan was sufficient under ERISA.

### B

Atwood contends that a "less deferential" abuse of discretion standard should be applied because Newmont is both the employer and the plan administrator. *See Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517, 1524 (9th Cir.1993). We hold that this "heightened standard" does not alter our traditional abuse of discretion review in the absence of specific facts indicating that Newmont's conflicting interest caused a serious breach of the plan administrator's fiduciary duty to Atwood, the plan beneficiary.

### 1

In *Firestone,* the Supreme Court stated that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." 489 U.S. at 115, 109 S.Ct. at 957. Our own cases have interpreted this language to mean that we apply "heightened scrutiny" where the plan administrator has a conflict of interest by virtue of its economic stake in the benefit decisions which it makes. *Watkins,* 12 F.3d at 1525.[3]

Although we have consistently stated that we apply this "less deferential" standard to decisions of apparently conflicted fiduciaries, we have not as yet stated in what way this lesser degree of deference actually alters our review. *See, e.g., Watkins,* 12 F.3d at 1524; *Taft v. Equitable Life Assurance Soc'y,* 9 F.3d 1469, 1474 (9th Cir.1993). Other circuits have attempted to clarify the standard.

The Fourth Circuit states that where a substantial conflict is shown it "will review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries." *Doe v. Group Hospitalization & Medical Serv.,* 3 F.3d 80, 87 (4th Cir.1993); *see also Van Boxel v. Journal Co. Employees' Pension Trust,* 836 F.2d 1048, 1052–53 (7th Cir.1987) (describing "sliding scale" standard).

The Eleventh Circuit takes a different approach; it has held that when a substantial conflict is shown, "a wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation...." *Brown v. Blue Cross & Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1566 (11th Cir. 1990) (footnote omitted), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991).

Thus, there are at least two very different formulations of the standard. The Fourth and Seventh Circuits use a variable "sliding scale," always applying the abuse of discretion standard, but decreasing the deference given to a conflicted fiduciary's decision in proportion to the seriousness of the conflict. *Doe,* 3 F.3d at 87; *Van Boxel,* 836 F.2d at 1052–53. The Eleventh Circuit applies a two-tier standard, using traditional abuse of discretion review unless a "serious conflict" is shown, at which point it will employ a more searching review. *Brown,* 898 F.2d at 1566. Under this standard, if a conflicted fiduciary's interpretation which advances the fiduciary's interest at the expense of the beneficiary's is "wrong" under *de novo* review but still "apparently reasonable," the fiduciary has committed an abuse of discretion unless the plan can show that the interpretation was not made to serve its conflicting interest. *Id.* at 1566–67.

█ A review of our own cases shows that we have employed a methodology similar to that of the Eleventh Circuit. We ultimately apply a traditional abuse of discretion standard to the decisions of apparently conflicted employer- or insurer-fiduciaries *unless* the

---

**3.** Our pre-*Firestone* cases also state that we give closer scrutiny to the decision of a plan fiduciary who has a substantial conflict. *Pilon v. Retirement Plan for Salaried Employees of Great N. Nekoosa Corp.,* 861 F.2d 217, 219–20 (9th Cir. 1988); *Fielding v. International Harvester,* 815 F.2d 1254, 1256 (9th Cir.1987); *Jung v. F.M.C. Corp.,* 755 F.2d 708, 711–12 (9th Cir.1985).

affected beneficiary comes forward with further evidence indicating that the conflicting interest caused a breach of the administrator's fiduciary duty to the beneficiary. *Taft,* 9 F.3d at 1474; *see Barnett v. Kaiser Found. Health Plan, Inc.,* 32 F.3d 413, 416 (9th Cir.1994) (holding that no heightened review applies in the absence of "serious conflict"); *Bogue v. Ampex Corp.,* 976 F.2d 1319, 1325 (9th Cir.1992) (same), *cert. denied,* —— U.S. ——, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993); *cf. Pilon,* 861 F.2d at 220 (applying heightened review where disputed issues of material fact existed as to whether administrators acted in good faith); *Fielding,* 815 F.2d at 1256 (applying heightened review where benefit decision would affect the individual decisionmaker financially); *Jung,* 755 F.2d at 711–12 (using less deferential standard where employer's denial of benefits to a class would avoid a substantial outlay).

▮▮▮ The "less deferential" standard under which we review apparently conflicted fiduciaries has two steps. First, we must determine whether the affected beneficiary has provided material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary. If not, we apply our traditional abuse of discretion review. On the other hand, if the beneficiary *has* made the required showing, the principles of trust law require us to act very skeptically in deferring to the discretion of an administrator who appears to have committed a breach of fiduciary duty. *See Firestone,* 489 U.S. at 111, 109 S.Ct. at 954 ("In determining the appropriate standard of review for actions under § 1132(a)(1)(B), we are guided by the principles of trust law.").

▮▮▮ Under the common law of trusts, any action taken by a trustee in violation of a fiduciary obligation is presumptively void. George T. Bogert, *Trusts* § 95, at 341–342 (6th ed. 1987). Where the affected beneficiary has come forward with material evidence of a violation of the administrator's fiduciary obligation, we should not defer to the administrator's presumptively void decision. In that circumstance, the plan bears the burden of producing evidence to show that the conflict of interest did not affect the decision to deny benefits. If the plan cannot carry that burden, we will review the decision *de novo,* without deference to the administrator's tainted exercise of discretion.

### 2

▮▮▮ Atwood has not shown that Newmont's apparent conflict interfered with its employees' decision to deny him severance pay. At oral argument, counsel for Atwood emphatically denied Atwood was relying upon any improper acts of the Newmont employees responsible for the decision. Atwood's counsel stated that: "There is absolutely no hint that either Mr. Miller or Mr. Scartezina had any personal motivations beyond their employment with Newmont." As we have explained above, the simple fact that employees of Newmont made the decision to deny benefits is not enough to establish a breach of fiduciary duty. We therefore review Newmont's decision for an abuse of discretion.

### IV

Atwood contends that, under either standard of review, the district court should not have granted summary judgment in favor of Newmont. We disagree. There are no disputed issues of material fact, and, as a matter of law, Newmont did not abuse its discretion in determining that Atwood voluntarily terminated his employment under the terms of the plan.

▮▮▮ Summary judgment should be granted where, viewing the evidence in the light most favorable to the non-moving party, there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Jesinger,* 24 F.3d at 1130. Atwood does not contend that there are disputed issues of material fact.

### A

▮▮▮ It is an abuse of discretion for an ERISA plan administrator to make a decision without any explanation, or in a way that conflicts with the plain language of the plan,

or that is based on clearly erroneous findings of fact. *Taft,* 9 F.3d at 1472–73.

▮ Newmont's decision was not an abuse of discretion under this standard. Although it is clear that Atwood's various positions at Newmont involved differing responsibilities, it was not an abuse of discretion for Newmont to conclude that his resignation did not follow a *substantial diminution* in responsibility.

Newmont has explained its decision to deny Atwood severance pay at some length; based on its evaluation of the relative responsibilities, compensation and contributions of Atwood's various positions, it determined that there had not been a "significant" diminution in his duties or responsibilities. This determination does not conflict with the plain language of the plan, which leaves the determination of what is a "significant" diminution to the discretion of the plan administrator.[4] Atwood does not argue that Newmont relied upon clearly erroneous findings of fact, nor do any such errors appear from the record. The parties agree as to the duties and responsibilities attendant to Atwood's successive positions; their dispute centers upon the application of the plan to those facts. That application was reserved to the administrator's discretion.

### B

▮ Atwood argues that the terms of the plan are ambiguous, and should be construed against Newmont, the drafter of the plan. This *contra preferentem* argument is inapposite. Fundamentally, Atwood's argument is that we should apply this doctrine of contract construction to nullify the abuse of discretion standard.

The parties dispute whether *contra preferentem* applies at all to this non-insurance contract drafted by Newmont. *Compare Kunin v. Benefit Trust life Ins. Co.,* 910 F.2d 534, 540 (9th Cir.1990) (ambiguities in insurance contract governed by ERISA to be construed against drafter), *cert. denied,* 498

U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1991), *with Eley,* 945 F.2d at 280 (*contra preferentem* does not apply to employer's self-insurance plan, drafted through collective bargaining process). We need not resolve this question, because the doctrine, even if applicable, does not aid Atwood in these circumstances.

Atwood argues that, because he interprets the plan to mean that his resignation followed a substantial diminution in his duties or responsibilities and Newmont interprets the plan to mean the opposite, the plan must be ambiguous, and hence under *contra preferentem,* his interpretation should be accepted. This application of the doctrine would completely do away with the abuse of discretion standard we must apply in reviewing Newmont's decision. Atwood does not argue that the plan is ambiguous, he argues that Newmont has misinterpreted the unambiguous terms of the plan. *Cf. Patterson v. Hughes Aircraft Co.,* 11 F.3d 948, 950 (9th Cir.1993) (term "mental disorder" was ambiguous where plan did not specify whether it referred to the *cause* or *symptoms* of the disorder).

▮ An ambiguous term is one that is susceptible of two or more distinct meanings. *See id.* Terms that are merely vague or indefinite are not construed against the drafter under the doctrine of *contra preferentem.* Atwood does not set forth some alternative meaning of the words "following" or "substantial," he merely takes issue with Newmont's determination of how closely the resignation must follow the job change, and how substantial the reduction in duties must be. These determinations are entrusted to the administrator's discretion under the plan.

### C

▮ Atwood's final argument concerns alleged procedural deficiencies in Newmont's plan. Atwood has not shown that these deficiencies caused him substantive harm.

---

**4.** Newmont's decision could also have been based on its determination that Atwood's resignation some seven months after his initial reassignment did not "follow" any diminution in his duties under the meaning of the plan. This determination is also within the administrator's discretion.

In order to warrant relief, procedural defects in a plan under ERISA must either cause substantive harm to the claimant or cause a substantive violation of ERISA. *Bogue,* 976 F.2d at 1326 & n. 33. Atwood's argument centers on the fact that the plan specifies an impermissibly short time period for appeals, and that Newmont's original letter denying severance pay did not state that Atwood could submit evidence to challenge the decision. Atwood however, does not contend that his appeal was rejected as untimely, or that he could not or did not submit evidence. He has shown no substantive harm or violation of ERISA.

The judgment of the district court is AFFIRMED.