Gloria SNOW, Plaintiff–Appellee,

v.

**STANDARD INSURANCE COMPANY,**
**Defendant–Appellant.**

**No. 95–55515.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1996.

Decided June 21, 1996.

---

David L. Bacon, Adams, Duque & Hazeltine and David A. Lingenbrink, Galton & Helm, Los Angeles, California, for defendant-appellant.

Stuart Sandhaus, Laguna Niguel, California, and Gerard Engelskirchen, Santa Cruz, California, for plaintiff-appellee.

Daniel Feinberg, Sigman, Lewis & Feinberg, Oakland, California, for amicus curiae.

Before: FARRIS, FERNANDEZ, and THOMAS, Circuit Judges.

FERNANDEZ, Circuit Judge:

Gloria Snow was an employee of Harlyn Products, Inc., which maintained a long-term disability plan. The Plan was issued by Standard Insurance Company, and that company also served as the Plan's claims review administrator. Snow claimed that she was disabled due to Chronic Fatigue Immune Dysfunction Syndrome (CFS), but her claim was denied. She then commenced this action pursuant to the Employment Retirement Income Security Act, 29 U.S.C. § 1132. The district court determined that it should review Standard's decision for abuse of discretion, and that there was evidence to support Standard's determination. However, the court was of the opinion that additional evidence should be obtained. Thus, it returned the matter to Standard for the purpose of further evidence development and awarded fees and costs to Snow. Standard appealed, and we reverse and remand.

## BACKGROUND

Harlyn Products, Inc., hired Snow in April of 1976, and by 1982 it had promoted her to the position of Director of Human Resources. In 1987, Snow began to suffer various symptoms, including fatigue, headaches, panic attacks, and concentration or memory problems. However, she continued to work at Harlyn until January 3, 1992. During the intervening years, Snow saw a number of physicians. Some of them determined that Snow had CFS or that it was highly probable that she did. One physician diagnosed Snow as having a panic disorder; others ruled out certain other maladies.

Snow filed her long-term disability claim in July of 1992 and alleged that she was disabled because of CFS. Her claim was temporarily approved on the sole basis that she may have been suffering from a disabling mental condition, but with the qualification that an additional investigation would be undertaken.

Standard's benefits analyst referred Snow's claim to Dr. David Franck, one of Standard's medical directors. Dr. Franck opined that Snow did not meet the criteria which the Center for Disease Control had developed for the purpose of diagnosing CFS. He recommended that Snow be assessed by a psychiatrist in order to determine whether a mental condition was impairing Snow's functional capacity. After the psychiatrist met with and tested Snow, he opined that Snow was suffering from a mental disorder, but that she could work full time and was not disabled due to CFS or any other disease. Standard then denied Snow's claim.

After Standard received a letter from Snow's attorney, it conducted a second review of her claim. One of Snow's attending physicians, Dr. De Remer, sent a letter to Standard in which she concluded that Snow was disabled from CFS and did qualify for long-term disability benefits. She later sent additional documentation explaining the basis of her diagnosis after Standard asked her for further information. However, Dr. De Remer also stated that Snow was not disabled by fatigue or pain. Another of Snow's attending physicians, Dr. Goldstein, also sent his notes and a CFS checklist to Standard. Standard asked a consulting physician, Dr. Fancher, to render an opinion. Dr. Fancher has an active practice and provides consulting services to Standard 8 to 12 hours per week. He is familiar with CFS and often determines that a claimant is afflicted with that syndrome. However, he is dubious that there are real experts in the area because of the very unique nature of the disease and its diagno-

sis. He was of the opinion that Snow was not afflicted with CFS.

Standard then denied Snow's claim on the ground that she did not meet the criteria for CFS as established by the Center for Disease Control. This litigation followed.

## JURISDICTION

The district court had jurisdiction over this ERISA matter pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARDS OF REVIEW

In an ERISA case, there are two levels at which the standard of review must be considered. The first level involves the standard for the district court's and our review of plan administrators' determinations. The second involves the standard for our review of the district court's determinations.

We will first consider the first level. A determination that denies benefits under an ERISA plan is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). When discretion is conferred, the exercise of that discretion is reviewed under the arbitrary or capricious standard, or for abuse of discretion, which comes to the same thing. *See Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1321 & n. 1 (9th Cir.1995); *McKenzie v. General Tel. Co.*, 41 F.3d 1310, 1314 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995); *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 (9th Cir.1993).

We have not been stingy in our determinations that discretion *is* conferred upon plan administrators. That is sensible be-cause a proper and efficient functioning of an ERISA plan does often depend upon the use of discretion by the plan fiduciaries. As we have pointed out, a plan does confer discretion when it "includes even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator." *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1325 (9th Cir.1992), *cert. denied*, 507 U.S. 1031, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993). In *Bogue* that element was found in language in an employment severance plan which provided that the administrator would make determinations about similar employment positions within the company. *Id.* at 1324. In other words, if the plan administrator has the authority to determine eligibility for benefits, that inherently confers discretion upon him. *See Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 949–50 (9th Cir.1993) (per curiam); *Eley v. Boeing Co.*, 945 F.2d 276, 278 (9th Cir.1991); *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1284–85 (9th Cir.1990), *cert. denied*, 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991).

The plan before us provides that there will be no benefit payment unless Standard is presented with what it considers to be satisfactory written proof of the claimed loss. We see no relevant difference between that and plans which declare that the plan administrator will determine eligibility. It is apparent that both require the administrator to decide whether the person has become eligible as a result of presentation of satisfactory proof to that effect. *See Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 378–80 (7th Cir.1994); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983–84 (6th Cir. 1991); *Bali v. Blue Cross & Blue Shield Ass'n*, 873 F.2d 1043, 1047 (7th Cir.1989). Therefore, the district court correctly determined that review of Standard's decision must be for an abuse of discretion.[1]

---

1. Snow asks us to apply a de novo standard based upon the doctrine of *contra proferentem*. That is on the theory that the plan in question is an insured plan and is ambiguous. *See Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir.), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990). But this case is not about construing ambiguous benefit terms, which have different possible meanings. *See Atwood*, 45 F.3d at 1324. Similarly, the doctrine of reasonable expectations cannot be used to strip the plan administrator of the discretion conferred on it based upon a circular theory that the very conferring of discretion cannot be anticipat-

That, however, does not quite end the inquiry because, as the Supreme Court has pointed out, if the plan administrator is operating under a conflict of interest, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115, 109 S.Ct. at 957. In this case, there was a formal conflict because Standard was both the insurance company and the Plan administrator. If that formal conflict led to a true conflict, the standard of review would not exactly change, but scrutiny of Standard's decision would become more searching. *See Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 552 (9th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995); *Atwood*, 45 F.3d at 1322.

In *Atwood*, we explained what that meant when we stated:

> The "less deferential" standard under which we review apparently conflicted fiduciaries has two steps. First, we must determine whether the affected beneficiary has provided material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary. If not, we apply our traditional abuse of discretion review. On the other hand, if the beneficiary *has* made the required showing, the principles of trust law require us to act very skeptically in deferring to the discretion of an administrator who appears to have committed a breach of fiduciary duty.

*Id.* at 1323.

When it decided this case, the district court did not have the benefit of *Atwood*. It opined that because of the apparent conflict it should use a sliding scale and apply a somewhat heightened standard of review. However, it also found that there was no evidence of bad faith or improper motivation. Standard did not reject all CFS claims; indeed, it approved about 75 percent of them. As the district court said, "There is no real evidence, other than an unfavorable result for the plaintiff, that the conflict actually impaired [Standard's] decision." Based upon those determinations, the district court should have applied the usual abuse of discretion test, rather than using the kind of sliding scale that we have since rejected in *Atwood*, 45 F.3d at 1322–23. Thus, the district court applied a somewhat overly stringent approach in reviewing Standard's actions.

■■■ That brings us to the second level of review, our review of the district court. We review de novo the district court's application of the abuse of discretion standard and its conclusion that a plan fiduciary has abused its discretion. *See Taft*, 9 F.3d at 1471. "Underlying findings of fact are reviewed for clear error." *Phillips v. Alaska Hotel & Restaurant Employees Pension Fund*, 944 F.2d 509, 515 (9th Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1942, 118 L.Ed.2d 548 (1992).

### DISCUSSION

■■■ While the district court did apply the abuse of discretion standard, it erred in the application because it failed to give sufficient deference to the Plan administrator's decision. As we have said, "[i]t is an abuse of discretion for an ERISA plan administrator to make a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact." *Atwood*, 45 F.3d at 1323–24; *see Taft*, 9 F.3d at 1472–73. The mere fact that the plan administrator's decision is directly contrary to some evidence in the record does not show that the decision is clearly erroneous. *See Taft*, 9 F.3d at 1473–74. Rather, "review under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'" *Concrete Pipe & Prods., Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602, 623, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993); *see Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 576 (9th Cir.), *cert. granted*, —— U.S. ——, 116 S.Ct. 493, 133 L.Ed.2d 419 (1995). That standard certainly does not

ed. *Cf. Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 386–87 (9th Cir.1994) (plan

terms which exclude benefits despite reasonable expectation of coverage can be stricken).

permit the overturning of a decision where there is substantial evidence to support the decision, that is, where there is "relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Maynard v. City of San Jose,* 37 F.3d 1396, 1404 (9th Cir.1994) (jury verdict); *cf. NLRB v. Musicians Union, AFM Local 6,* 960 F.2d 842, 844 (9th Cir.1992) (administrative agency decision).

It is clear that Standard did not abuse its discretion by failing to explain its decision or by making a decision that conflicted with the Plan's language. As the district court said, Snow did not even assert that Standard had abused its discretion in either of those respects. That left only the clearly erroneous finding of fact facet to be considered.

■ For the purpose of deciding that issue, the district court was limited to the record before the Plan administrator. Were it to go beyond that record, it would err because it would then be deciding that "a plan administrator abused its discretion by failing to consider evidence not before it." *Taft,* 9 F.3d at 1472; *see also Winters,* 49 F.3d at 553. Thus, the issue before the district court was not whether it would have liked to have developed even more evidence or whether it would be interested in what other experts might think. *See McKenzie,* 41 F.3d at 1316–17. The issue was whether, based upon the record before it, Standard abused its discretion by failing to base its decision on substantial evidence. If it did not, the inquiry should have ended. *Cf. Winters,* 49 F.3d at 553–54.

Here the difficulty is that the district court indicated that there was much evidence to support the administrator's determination, but then went on to seek more. The district court said that the information from Snow's own doctors was conflicting and contradictory and not terribly convincing, and that a finding of disability was not the only reasonable conclusion to be reached from the extensive evidence in the record. On the other

hand, the court said that evidence that Snow's symptoms failed to meet the Center for Disease Control's criteria for CFS appeared to be persuasive.[2] The court was also impressed with the presentation by Standard's quality control specialist, who pointed out the conflicts in the records. Those conflicts were ultimately resolved by Standard in its decision regarding Snow. In other words, the court suggested that it might conclude that Standard faced a record in conflict and that it had used its discretion to resolve the issue.

However, perhaps in part because of the formal conflict of interest it had identified, the district court decided that Standard should have developed still more evidence before deciding against Snow. That was not because evidence to support the decision was entirely lacking. Had the district court decided that the evidence failed to support the Plan administrator's decision, a proper response would have been to overturn the decision and direct the payment of benefits.

The district court's middle road of directing the taking of still more evidence before any decision could be made was not an appropriate option. It was an error akin to the one we found in *McKenzie* where the district court adopted the view that there must always be a vocational expert's opinion. 41 F.3d at 1317. We said that the Plan was not required to collect vocational evidence "where the evidence in the administrative record supports the conclusion that the claimant does not have an impairment which would prevent him from performing some identifiable job." *Id.* Here the district court thought that Snow should have been referred to a doctor who had special expertise in the field of CFS. But, assuming that there can be a CFS expert as such, Snow's own doctors purported to have expertise, as did Standard's doctor. More importantly, there was evidence in the record to support the decision of the Plan administrator, and it could not be said that as a matter of law further expert

---

2. That the application of those criteria was not an abuse of discretion can hardly be doubted. *See Mitchell v. Eastman Kodak Co.,* 910 F.Supp.

1044, 1050–54 (M.D.Pa.1995); *Cuff v. International Business Mach. Co.,* 843 F.Supp. 26, 29 (E.D.Pa.), *aff'd,* 37 F.3d 1486 (3d Cir.1994).

evidence was required.[3] Nor was Standard required to obtain more information from Snow's own doctors or employer, if the evidence permitted the determination it reached. Moreover, if Standard's decision was not supported by substantial evidence in the record, the district court should have given Snow a judgment for benefits rather than subjecting her to further proceedings before the Plan administrator.

In short, the district court should not have ordered the taking of more evidence; it should have decided the case one way or the other on the basis of the evidence in the record. That would have given Standard the deference it was due, while protecting Snow if Standard was abusing its discretion in making its determination. That would also have avoided an overly intrusive process which would lead the courts into a morass of minutely detailed examinations of every decision by plan administrators. That kind of intrusive process would require fine-grained determinations about whether some added piece of evidence would be helpful, rather than more coarse-grained determinations about whether the evidence at hand would support the plan administrator's decision. The fine-grained approach would give no real deference to plan administrators in conditions of uncertainty, but would require them to take still more evidence, or further steps. That is a process which would extend the delays and costs of all ERISA procedures. Plan administrators would have to try to guess just how much information they had to develop before they could make a decision, even though they already had a great deal of information before them. In attempting to predict just how much information a court might later think it would prefer to have, plan administrators would run the risk of both delay and expense. In this case, for example, Snow was awarded $197,126 in at-

torneys fees and costs. That was not because Standard had made the wrong decision—the district court did not determine that it had—but simply because the district court thought that it would prefer to have had more evidence developed before a decision was made.

Because of these defects in the district court's approach, we will reverse so that it can review the Plan administrator's decision for abuse of discretion based upon the existing record.[4]

CONCLUSION

█ When an ERISA plan administrator has discretion to determine whether a claimant has met the eligibility requirements of the plan, the administrator's decision will be overturned only if it has abused its discretion. In reviewing the administrator's decision, the district court must limit itself to the record before the administrator when it made that decision and must determine whether the correct decision was made. If the administrator's factual determinations were clearly erroneous, that constitutes an abuse of discretion, but courts will not find clear error when substantial evidence in the record supports those determinations. The administrator need not be a modern Rhadamanthus; he need only refrain from being arbitrary or capricious.

In this case, the district court did not make an ultimate decision based upon the record because it preferred to wait until the record had been expanded. It ordered that expansion and awarded substantial fees and costs to Snow. We reverse the judgment, set aside the award of fees and costs, and remand so that the district court can decide

---

3. Were that kind of evidence always required, Standard's decision may well have been violative of the Plan itself, and Standard could then have been directed to apply the Plan correctly. *See Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan,* 85 F.3d 455, 461 (9th Cir. 1996) (when plan misconstrued and wrong standard applied remand proper); *Patterson,* 11 F.3d at 951 (same). A similar rule regarding procurement of further evidence could also apply if review of the Plan administrator's

decision were *de novo. See Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan,* 46 F.3d 938, 943–44 (9th Cir.1995).

4. We will also set aside the award of attorneys fees and costs because Snow has not yet prevailed on any issue in the litigation. *Cf. Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 589–90 (9th Cir.1984).

this case based upon the record developed before the Plan administrator.

REVERSED and REMANDED.