124 F.3d 211
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert A. FICALORA, Plaintiff-Appellant,
v.
INTERNATIONAL BUSINESS MACHINES CORPORATION, a Delaware
corporation licensed to conduct business in Washington;
J.J. Sinnott, IBM Plan Administrator; International
Business Machines, Inc. Medical Disability Income Plan;
Chase Manhattan Bank, Trustee of MDIP; Michael A. Tarre,
MDIP Administrator; Arnold J. Kaminer; Charles D. Grose,
M.D.; Steve Redmond, M.D.; W.R. Matson; D.A. Peguero;
T.L. Richards; D.B. Robbins, M.D., Defendants-Appellees.
 No. 96-35229.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 5, 1997.
Decided Sept. 15, 1997.
 
 Appeal from the United States District Court for the Western District of Washington. Robert J. Bryan, District Judge, Presiding.
 Before WRIGHT, PREGERSON and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In 1980, International Business Machines (IBM) employed Robert A. Ficalora. In 1988, Ficalora began experiencing vision loss, fatigue, and numbness. After his doctor diagnosed him with multiple sclerosis (MS), Ficalora applied for benefits under IBM's Medical Disability Income Plan (MDIP or the Plan). The Plan Administrator denied Ficalora's request for benefits because Ficalora did not demonstrate that MS prevented him from being gainfully employed, as required by the Plan.
 
 
 3
 Ficalora then sued IBM in federal district court to enforce his right to benefits under the Plan, pursuant to Section 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA). The district court granted summary judgment in IBM's favor, and Ficalora appeals. We have jurisdiction under 28 U.S.C. S 1291, and we affirm.
 
 
 4
 * STANDARD OF REVIEW
 
 
 5
 A denial of benefits under ERISA should be "reviewed under a de novo standard unless the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If an ERISA plan vests a plan administrator with such discretionary authority, however, "a district court may review the administrator's determination only for an abuse of discretion." Winters v. Costco Wholesale Corp., 49 F.3d 550, 552 (9th Cir.), cert. denied, 116 S.Ct. 276 (1995).
 
 In the present case, the Plan provides:
 
 6
 The Plan Administrator shall have full power and au-thority to determine all matters arising in the administration, interpretation and application of the Plan, not inconsistent with the provisions of applicable law, and its interpretation and decisions with respect thereto shall be final and conclusive
 
 
 7
 Ficalora argues that the district court erred when it applied an abuse of discretion standard of review because: (1) the Plan did not give the Plan Administrator the discretion to make benefits decisions, and (2) the Plan Administrator's decision to deny benefits was influenced by a conflict of interest.
 
 
 8
 We disagree with both of Ficalora's arguments. We have repeatedly held that language similar to the language in IBM's Plan gives plan administrators the discretionary authority to determine eligibility for benefits. See, e.g., Canseco v. Construction Laborers Pension Trust for Southern California, 93 F.3d 600, 605 (9th Cir.1996), cert. denied, 117 S.Ct. 1250 (1997) (trustee of plan "shall have the power to administer" the plan, including the power "to construe the provisions of the Plan" and "any such construction adopted in ... good faith shall be binding"); Patterson v. Hughes Aircraft Co., 11 F.3d 948, 949 n. 1 (9th Cir.1993) (the plan administrator will issue a "written decision of approval or denial" including, in the event of denial a "clear reference to the Plan provisions upon which the denial is based."); Jones v. Laborers Health & Welfare Trust Fund, 906 F.2d 480, 481 (9th Cir.1990) (trustees shall have power "to construe the provisions of this Trust Agreement and the Plan, and any such construction adopted by the [trustees] in good faith shall be binding"); Madden v. ITT Long Term Disability Plan for Salaried Employees, 914 F.2d 1279, 1284 (9th Cir.1990) (the Administration Committee "shall have the exclusive right ... to interpret the Plan and to decide any and all matters arising hereunder, including the right to remedy possible ambiguities, equities, inconsistencies, or omissions ... [and] all interpretations and decisions of the ... Administration Committee ... with respect to any matter hereunder shall be final, conclusive and binding on all parties affected thereby.").
 
 
 9
 Under our precedent, the Plan Administrator's decision to deny Ficalora benefits is not subject to de novo review because it was not influenced by a conflict of interest. The parties do not dispute that a conflict of interest exists: IBM both employs the Plan Administrator and pays, either directly or through a fund, any benefits administered pursuant to the Plan.
 
 
 10
 To determine if a Plan Administrator's decision is entitled to a less deferential standard of review because of such a conflict, we employ a two-stage inquiry. Atwood v. Newmont Gold Co., 45 F.3d 1317, 1323 (9th Cir.1995). In the first stage, we "must determine whether the affected beneficiary has provided material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." Id. Assuming that the beneficiary successfully satisfies this burden, in the second stage, "the plan bears the burden of producing evidence to show that the conflict of interest did not affect the decision to deny benefits." Id. If the plan does not carry that burden, we must review de novo the plan administrator's denial of benefits. Id.
 
 
 11
 Ficalora satisfied his burden in the first stage of this inquiry by pointing to a statement made by James J. Sinnott while he was the Plan Administrator considering Ficalora's request for benefits. According to Ficalora, Sinnott stated: "we are not going to pay you for the rest of your life."
 
 
 12
 Nevertheless, the district court was correct in applying an abuse of discretion standard of review, because IBM satisfied its burden, in the second stage, of "producing evidence to show that the conflict of interest did not affect the decision to deny benefits." Atwood, 45 F.3d at 1323. The plan administrator ultimately responsible for denying Ficalora benefits was Michael A. Tarre, not Sinnott. And, nothing in the record indicates that Tarre was influenced by a conflict of interest.
 
 
 13
 We conclude that the district court properly applied an abuse of discretion standard of review.
 
 II
 DENIAL OF BENEFITS
 
 14
 An ERISA plan administrator such as Tarre abuses his discretion if he "relies on clearly erroneous findings of fact in making benefits determinations." Taft v. Equitable Life Assur. Soc., 9 F.3d 1469, 1473 (9th Cir.1993); see also Atwood, 45 F.3d at 1323-24. Ficalora argues that Tarre relied on a clearly erroneous finding of fact in making the benefits denial decision--tarre's finding that Ficalora did not prove that MS prevented him from "the taking of any employment for pay or profit."[1]
 
 
 15
 IBM concedes that Ficalora adequately demonstrated he suffered from MS. Based on the evidence available to him at the time he made his decision, however, Plan Administrator Tarre did not clearly err in finding that Ficalora did not demonstrate that MS precluded Ficalora from engaging in any gainful employment. Dr. Swanson, the IBM physician who examined Ficalora, stated that Ficalora had "no clear physical Limitation" that would prevent him from working, and nothing in the record establishes that Ficalora was completely disabled from working. Given this state of the record, Tarre did not clearly err in finding that Ficalora failed to prove he was incapable of performing any work for pay or profit.
 
 III
 EXTENT OF THE ADMINISTRATIVE RECORD
 
 16
 After Tarre completed his final review of Ficalora's application, he offered to perform an additional review to consider additional evidence, provided that Ficalora satisfied several conditions. When Ficalora failed to satisfy those conditions, Tarre refused to perform the additional review. Ficalora contends that his administrative record closed on February 14, 1994, the date when Tarre informed him that he would not be performing the additional review. See Taft, 9 F.3d at 1472 (holding that, to determine whether the Plan Administrator abused its discretion, a court of appeals may only review the evidence that was presented to the Plan Administrator as part of Ficalora's administrative record). In contrast, IBM argues that the administrative record closed on January 21, 1993, the date when Tarre issued his final denial of Ficalora's benefits request. Because the facts are not in dispute, only the contentions, we may resolve as a matter of law the issue of when the administrative record closed.
 
 
 17
 In our view, even assuming Tarre had the authority to offer to conduct an additional review, Tarre was only required to perform the review if he and Ficalora reached an agreement. Both the Plan and ERISA are silent as to how to interpret an offer of additional review by a Plan Administrator. However, "[i]t is well settled that when ERISA is silent on an issue, [a court] may turn to state law to fashion the appropriate federal common-law rule." Hotel Employees & Restaurant Employees International Union Welfare Fund, 5( F.3d 719, 721 (1995); see also Saltarelli v. Bob Baker Group Medical Trust, 35 F.3d 382, 386 (9th Cir.1994). To determine whether the correspondence between Ficalora and Tarre ultimately resulted in an agreement that required Tarre to conduct an additional review, we therefore turn to traditional principles of contract law.
 
 
 18
 On August 20, 1993, Tarre offered to conduct an additional review, provided that Ficalora agreed to certain conditions. Ficalore accepted the offer on September 17, but conditioned his acceptance on several matters. Under settled principles of contract law, Ficalora's September 17 letter was a counteroffer, not an acceptance, because it imposed additional conditions. See Rorvig v. Douglas, 123 Wash.2d 854, 858 (1994) ("It is a basic rule of contract formation that in expression of assent that changes the terms of the offer in any material respect may be operative as a counteroffer; but it is not an acceptance and consummates no contract."); Strassburg v. Ricotta, 480 N.Y.S.2d 649, 650 (1984) ("under ordinary principles of contract law, a purchaser who has not yet subscribed [to] an agreement rejects it by the naking of either a conditional acceptance or a counter offer."); Ardente v. Horan, 117 R.I. 254, 259-60 (1976) ("An acceptance which is equivocal or upon condition or with a limitation is a counteroffer and requires acceptance by the original offeror before a contractual relationship can exist."); Landberg v. Landberg, 24 Cal.App.3d 742, 750 (1972) ("qualified acceptance constitutes a rejection terminating the offer; it is a new proposal or counteroffer which must be accepted by the former offeror now turned offeree before a binding contract results.").
 
 
 19
 In response to Ficalora's counteroffer, Tarre wrote a letter dated November 15, 1993, in which he stated that IBM would be unable to meet one of Ficalora's conditions. Tarre also reworded Ficalora's other conditions, and asked whether Ficalora would still accept. For the same reason that Ficalora's September 17 letter was a counteroffer (it modified the terms of the offer by imposing additional conditions), Tarre's November 15 letter was a counteroffer as well.
 
 
 20
 In a letter dated November 19, 1993, Ficalora responded to Tarre's counteroffer with another counteroffer. In his letter of February 14, 1994, Tarre expressly rejected Ficalora's final counteroffer. Thus, Tarre and Ficalora never reached an agreement requiring Tarre to conduct an additional review. We conclude, therefore, that the administrative record closed on January 21, 1993, the date IBM finally rejected Ficalora's application for benefits.
 
 
 21
 AFFIRMED.
 
 PREGERSON, Circuit Judge, dissenting:
 
 22
 I dissent. The majority fails adequately to consider the critical issue facing us in this case: Was there "satisfactory proof to IBM that a disability from any cause prevented [Ficalora from] the taking of any employment for pay or profit?"[1] It is undisputed that Ficalora suffered from a severe case of multiple sclerosis ("MS"), a devastating physical illness.[2] It is also undisputed that the Social Security Administration considered Ficalora disabled and awarded him disability benefits and that several medical doctors documented the severe effects that MS had on Ficalora's health. I submit that the Plan Administrator abused his discretion in failing to conclude that Ficalora presented "satisfactory proof" that his chronic MS prevents him from taking any employment for pay or profit.
 
 
 23
 * Before describing the evidence before the Plan Administrator, it is important to understand how IBM employees might qualify for disability benefits under the IBM Medical Disability Income Plan
 
 
 24
 ("Disability Plan"). An employee is deemed medically disabled when he or she can meet the following test: "An employee will be considered disabled by giving satisfactory Proof to IBM that a disability from any cause prevents the taking of any employment for pay or profit."
 
 
 25
 To apply for benefits under the Disability Plan, an applicant must submit an application to the IBM medical department. Two IBM officials, the Area Managing Physician and the Area Personnel Manager, prepare the applicant's application for disability benefits. Sometimes the Area Managing Physician arranges for the applicant to be evaluated by medical consultants selected by IBM. After taking all these steps, the Area Managing Physician assembles the administrative record[3] that will be considered in deciding whether to grant the applicant's request for disability benefits.
 
 
 26
 The administrative record is forwarded to an IBM official called the Medical Director, who could approve the application or forward the administrative record to the Disability Plan Panel. The Disability Plan panel then makes a recommendation to the Plan Administrator whether to grant disability benefits under the Plan to the applicant. The Plan Administrator is ultimately responsible for issuing a benefits decision.
 
 
 27
 An employee may request review of a benefits denial by the Plan Administrator. The Plan Administrator is then required to issue a notice describing the result of his review within 60 days of the request for review.
 
 II
 
 28
 In March 1980, IBM employed Ficalora as a supply room clerk. Over the course of several years, Ficalora was promoted to increasingly more responsible positions until he became an Accounts Systems Engineer. In December 1988, while still employed by IBM, Ficalora experienced pain and loss of vision in his right eye. Ficalora consulted an optometrist, who referred him to a neurologist because of the possibility that Ficalora might suffer from MS.
 
 
 29
 Over the next few years, Ficalora's vision improved. By May, 1991, however, Ficalora developed other symptoms:
 
 
 30
 [Ficalora] developed a band of numbness around his body at the level of the umbilicus which spread to the genitalia and legs and feet. Then shortly after he was nauseated, developed urgency and frequency, fatiguability and problems with his memory.
 
 
 31
 In June 1991, Ficalora went to see Dr. Roy L. Swank of the Swank Multiple Sclerosis Clinic of Oregon Health Sciences University, who diagnosed him with MS. Dr. Swank "recommended to [Ficalora] that he apply for retirement."
 
 
 32
 Ficalora began to miss work frequently. On June 18, 1991, Ficalora wrote to Austin Blood, an IBM Branch Manager, to request Disability Plan Benefits. In response to Ficalora's request for benefits under the Disability Plan, on June 26, 1991, Dr. Charles Grose, IBM's Western Area Medical Director, wrote a letter asking Dr. Swank for a "summary of [his] evaluation of [Ficalora], including [his] diagnosis, the extent of [Ficalora's] disability, recommended treatment, and prognosis." On July 9, 1991, after examining Ficalora, Dr. Swank wrote:
 
 
 33
 [Ficalora] is very sensitive to stress, as are all M.S. patients, and in his case, memory and clarity of thought are inclined to suffer. Considering the type of work [he] does, I do not believe he will be able to continue to do satisfactory work. However, he might be able to carry on at half-time, and that would perhaps be better for [him] as a first step towards retirement.
 
 
 34
 Starting in August, 1991, Ficalora tried to work half days, three days a week, and was reassigned by his manager to a position that involved less customer interaction. However, Ficalora's new job proved to be very stressful, and he began to experience exacerbated fatigue, burning in his feet, dizziness, nausea, and head and leg aches.
 
 
 35
 On October 4, 1991, Ficalora was examined by Dr. Philip Swanson an IBM-selected neurologist at the University of Washington Medical Center.[4] In his report, dated October 23, 1991, Dr. Swanson stated:
 
 
 36
 [W]e do not have firm, solic evidence that MS is the diagnosis, though I have no reason to doubt that in view of the other sensory symptoms that he has had, from time to time. I, therefore, think it is more probable than not that MS is, indeed the correct diagnosis. Meanwhile, because of Ficalora's fatigue, he continued to be unable to perform his job. Ficalora's supervisor informed him that he should discontinue work pending review of his eligibility for benefits under the Disability Plan.
 
 
 37
 In a phone conversation between Dr. Swank and an IBM doctor, Dr. Swank stated that Ficalora could only work a few hours per day, and expressed the opinion that Ficalora was "disabled now [and] in the foreseeable future."
 
 
 38
 IBA then selected another doctor, a psychiatrist named Dr. Jason McLurg, to examine Ficalora IBM did not ask Dr. McLurg to evaluate whether Ficalora could take any employment for pay or profit, the standard under the Disability Plan. Rather, IBM requested that Dr. McLurg's report contain an evaluation of whether there was a psychiatric component to Ficalora's fatigue, as well as any recommendations for treatment. After examining Ficalora, Dr. McLurg stated that Ficalora had a "probable diagnosis of a devastating physical disorder, multiple sclerosis," and observed that Ficalora was not taklng the diagnosis of MS "laying down," but rather, "was trying to get the most out of his life and to treat his body in the best way possible to minimize the effects of the disease." Dr. McLurg recommended an MRI scan to confirm the diagnosis of MS, and a trial of Prozac "to see if Ficalora's energy or endurance could be improved."
 
 
 39
 In March 1992, Dr. Grose and Dr. Steven Redmond (IBM's Western Area Medical Director and Western Region Managing Physician, respectively) forwarded Ficalora's application to IBM's United States Medical Director, Dr. Arnold J. Kaminer. Drs. Grose and Redmond did not examine Ficalora. Rather, upon reviewing his medical records the doctors recommended that Ficalora's application for benefits be denied, primarily because there was not "sufficient objective evidence that [Ficalora] is disabled." The United States Medical Director also recommended that Ficalora's request be denied. These recommendations and the administrative record were forwarded to the Disability Plan panel.
 
 
 40
 On May 20, 1992, the Disability Plan panel rejected Ficalora's application because "the medical evidence does not support a disabling condition." Sometime later, the Plan Administrator decided to deny Ficalora benefits.
 
 
 41
 Meanwhile, on May 17, 1992, the Social Security Administration advised Ficalora that he was considered disabled by MS as off June 1, 1991, and awarded him disability benefits. The Social Security Administration disability examiner found Ficalora "incapable of performing any past relevant work," and "restricted by his residual functional capacity to less than sedentary work."
 
 
 42
 On June 12, 1992, Ficalora received IBM's formal letter denying him benefits. The letter stated the following two reasons for the denial, among others:
 
 
 43
 The evidence in your case was insufficient to prove disabllity and a cause of disability to the satisfaction of IBM because:
 
 
 44
 (a) it did not include objective medical evidence sufficient to definitively establish the presence of a specific disease entity of a type which can be totally disabling.
 
 
 45
 * * *
 
 
 46
 (b) it did not include objective medical evidence of impairment sufficiently severe as to make you incapable of taking any employment for pay or profit....(We note in passing that, even if you do have multiple sclerosis, this does not necessarily make you unable to work, as in some cases multiple sclerosis takes a relatively mild course.)
 
 
 47
 * * *
 
 
 48
 You have complained of symptoms such as fatigue, head pains, nausea, joint aches, intermittent numbness, and frequency of urination. However, IBM does not consider symptom reports to be satisfactory evidence of disability unless accompanied by objective medical evidence of an underlying medical condition that would account for the reported symptoms to be disabling in degree. The sufficient objective medical evidence presented thus far in your case was not sufficient to support the claimed symptoms and a disabling degree of severity.
 
 
 49
 On June 19, 1992, Ficalora decided to undergo a Magnetic Resonance Imaging (MRI) scan.[5] The scan revealed "extensive bilateral demyelinating plaque disease."
 
 
 50
 On August 3, 1992, Ficalora underwent an examination by Dr. Richard Blanck, a neurologist. Dr. Blanck diagnosed Ficalora with MS, and observed the following:
 
 
 51
 His symptoms and signs include burning paresthesias in his feet, lower extremity spasticity, walking difficulty secondary to generalized weakness and easy fatigability and visual difficulty. MS is a chronic, progressive neurologic disorder. His prognosis is guarded and the patient's physical limitations are permanent from a medical standpoint.
 
 
 52
 On August 7, 1992, Ficalora requested the Plan Administrator to review the denial of his claim for disability benefits. Ficalora sent new evidence in support of his request for review, including his MRI and Dr. Blanck's August 3, 1992, report. Ficalora also sent to the Plan Administrator an August 18, 1992, report authored by Dr. Blanck, that confirmed Ficalora's problems of "generalized weakness and easy fatigueability, walking difficulty because of lower extremity weakness, burning in his feet and spasms that occur intermittently involving the left leg."
 
 
 53
 In response, the Plan Adminstrator asked Ficalora on August 28, 1992, to authorize the release of medical records from Dr. Blanck and the Social Security Administration. Ficalora complied with with request.
 
 
 54
 In the August 28, 1992, letter, the Plan Administrator also asked Ficalora to "undergo a complete neurological assessment by a consultant chosen by IBM, which may include formal testing of cognitive function." Ficalora's attorney refused this request and gave the following reason:
 
 
 55
 [S]uch an examination is unnecessary given the ample medical evidence already in the file establishing disability. Mr. Ficalora has previously been examined by two (2) IBM chosen and paid medical consultants with respect to this claim.
 
 
 56
 * * *
 
 
 57
 In addition to these two (2) reports by IBM paid medical consultants, you also have reports in your file from Drs. Swank, Blanck, Kornmesser, Stanfield, and Almarez. All of these reports support either Mr. Ficalora's symptomology, diagnosis of Multiple Sclerosis or prognosis and degree of disability.
 
 
 58
 On November 18, 1992, the Disability Plan panel again reviewed Ficalora's file and recommended that benefits be denied. The notice of denial stated the following to Ficalora: "In your case, although you have a medical condition, you have not complied with our repeated requests for complete medical information sufficient to enable us to resolve the issues posed in [the June 12, 1992 notice]."
 
 
 59
 The Plan Administrator reviewed Ficalora's file and the recommendation of the Disability Plan panel, and decided to deny Ficalora benefits because Ficalora's "records contained insufficient objective medical evidence of [Ficalora's] inability to work."
 
 
 60
 Before the Plan Administrator could issue a notice to Ficalora, records from the Socia] Security Administration arrived at IBM, along with an updated letter from Dr. Blanck dated November 3, 1992. Dr. Blanck's letter stated that Ficalora's symptoms "have been chronic and slowly progressive." The Disability Plan panel met again on December 18, 1992, reconsidered Ficalora's file with this additional evidence, and yet again recommended a denial of benefits. The Plan Administrator again agreed with the Disability Plan panel. On January 21, 1993, the Plan Administrator issued a final denial of benefits letter, which stated that Ficalora did not present "satisfactory proof ... that a disability ... prevents the taking of any employment for pay or profit."
 
 III
 
 61
 The majority states that the Plan Administrator did not clearly err in finding that Ficalora did not prove that multiple sclerosis prevented him from "the taking of any employment for pay or profit." In support of this assertion, the majority points to a single handwritten note by an IBM physician, Dr. Swanson, that Ficalora has "no clear physical limitation." Dr. Swanson based this opinion on his October 4, 1991, evaluation of Ficalora.
 
 
 62
 Dr. Swanson's handwritten note does not necessarily indicate that Ficalora had the ability to take any employment for pay or profit. It only states that Ficalora has no "clear" limitation. Thus, Dr. Swanson left open the possibility that a condition that was difficult to diagnose might account for Ficalora's claimed inability to take employment for pay or profit. In the present case, the medical doctors did not conclusively establish that Ficalora had MS until well after Swanson's October 4, 1991, examination of Ficalora.
 
 
 63
 Even assuming that Dr. Swanson's handwritten note does evidence his conclusion that Ficalora could take employment for pay or profit, that conclusion is contradicted by significant evidence that existed on October 4, 1991. For instance, Dr. Swank recommended in June 1991, "that [Ficalora] apply for retirement." Dr. Swank also stated the following on July 9, 1991: "Considering the type of work [Ficalora] does, I do not believe he will be able to continue to do satisfactory work. However, he might be able to carry on at half-time, and that would perhaps be better for [him] as a first step towards retirement." Ficalora's attempt to work in a low-stress job for half-days, three days a week, however, ended in failure because exacerbated fatigue, burning in his feet, dizziness, nausea, and head and leg aches, prevented Ficalora from working.
 
 
 64
 Furthermore, it is undisputed that Ficalora suffered from a chronic form of MS that worsened over time.[6] If Ficalora's MS did not render him unable to take employment for pay or profit in October 4, 1991, it may have made him unable to take employment for pay or profit by early 1993, where Ficalora's application for benefits was considered. Thus, the important question before the Disability Panel and Plan Administrator was whether Ficalora presented satisfactory proof of eligibility under the Disability Plan in early 1993.
 
 
 65
 Ficalora presented substantial evidence that he could not take employment for pay or profit in early 1993. First, the Social Security Administration decided on May 17, 1992, to consider Ficalora disabled by MS as of June 1, 1991, and to award him disability benefits. Second, the Social Security disability examiner found that Ficalora was "incapable of performing any past relevant work," and was "restricted by his residual functional capacity to less than sedentary work." Third, Ficalora's MRI revealed "extensive bilateral demyeliniating plaque disease." Fourth, Dr. Blanck stated in a November 3, 1992, letter the following: "[Ficalora's] symptoms have been chronic and slowly progressive. The course of MS is inpossible to predict but the chronic progressive course speaks for a poor prognosis."
 
 
 66
 In my view, Dr. Swanson's brief, handwritten comment is not sufficient to support the Plan Adiministrator's decision to deny disability benefits to Ficalora. Nor do I see any other evidence that would support the Plan AdmiIistrator's decision. If this is the only evidence in support of the position of the Plan Administrator, I submit that he abused his discretion by denying Ficalora benefits under the Disability Plan.
 
 
 67
 I also believe that the majority places too onerous a burden of proof on Ficalora. He is not required to rebut every scintilla of evidence that might suggest he could do some small amount of work for a short period of time. The Plan Administrator abused his discretion because under any view of the evidence, Ficalora presented satisfactory proof to IBM that his MS prevented him from taking any employment for pay or profit.[7] I would reverse the district court's opinion affirming the Plan Administrator's decision.[8]
 
 IV
 
 68
 It is undisputed that the Social Security Administration considers Ficalora disabled and entitled to benefits because he is unable to do even sedentary work. Several doctors have told Ficalora that he should retire. One of IBM's doctors concluded that Ficalora is "totally disabled for any type of gainful employment," although this last bit of evidence may have arrived late in the day. Even without that last bit of evidence, it is clear that Ficalora presented more than "satisfactory proof" that he could not take any employment for pay or profit due to his chronic, worsening MS.
 
 
 69
 In ny view, this case is an example of a corporate bureaucracy disregarding the pain and suffering of its disabled employees. One might also conclude that Ficalora fell victim to an uncaring review scheme that places the "bottom line" above the interests of loyal, disabled employees. Ficalora is just such an employee, suffering the ravages of a chronic form of MS, who is denied the means to live his life with dignity. Regardless of how one views this case, it represents the shameful mistreatment of an employee forced to simultaneously battle MS and IBM.
 
 
 70
 Accordingly, I would reverse the district court and find that the Plan Administrator abused his discretion.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Plan provides:
 An employee will be considered disabled by giving satisfactory proof to IBM that a disability from any cause prevents the taking of any employment for pay or profit.
 
 
 [1]
 This is the standard Ficalora had to meet to be eligible for benefits under the IBM Medical Disability Income Plan
 
 
 [2]
 Multiple sclerosis is a disorder of the nervous system for which there is no known cure. Hughes v. Boston Mutual Life Ins. Co., 26 F.3d 264, 266 (1st Cir.1994). Symptoms include weakness, fatigue, loss of coordination, depression, and stiffness or weakness in the lower extremities. Id. Fatigue "commonly occurs as the principal presenting symptom of the disease and is a frequent cause for unemployment in MS patients." Weinshenker, et al., A Double-Blind, Randomized Crossover Trial of Pemoline in Fatigue Associated with Multiple Sclerosis, 1648 Neurology 42, August 1992
 
 
 [3]
 The administrative record consists of the application; the IBM medical file; the Area Managing Physician's written summary of the application, recommendation, and supporting medical documentation; reports from the applicant's physicians; reports from IBM consultants; the applicant's last three performance appraisals; the applicant's work history and profile; and any other relevant documents
 
 
 [4]
 Dr Swanson also reviewed Ficalora's medical record, and the evaluations of Drs. Almaraz and Swank
 
 
 [5]
 MRI scans are the "most valuable investigative tool in diagnosing MS." David H. Miller, M.D., Magnetic Resonance Imaging in the Diagnosis of Multiple Sclerosis In an MRI scan of a person with MS, white matter lesions or plaques are present in parts of the brain
 
 
 [6]
 A report by the U.S. Department of Health and Human Services about MS identifies two kinds of the disease: (1) exacerbating-remitting disease, characterized by "[p]eriods of deteriorating ability ... followed by periods of recovery;" and (2) chronic progressive disease, which has a "steady downhill course." Multiple Sclerosis--Medicine for the Public, (United States Department of Health and Human Services, Public Health Service, national Institutes of Health, and Warren Grant Magnuson Clinical Center), Aug. 1990, at section entitled "Symptoms."
 
 
 [7]
 In hindsight, it is clear that Ficalora is eligible for benefits under the Disability Plan. On March 5, 1993, Ficalora voluntarily went to Dr. Swanson, the IBM neurologist, for another examination. This time, Dr. Swanson recommended that Ficalora seek retirement from his job at IBM. In May 1993, Dr. Swank reexamined Ficalora, and stated that Ficalora was "at present totally disabled for any type of gainful employment."
 
 
 [8]
 Because I come to this conclusion, it is unneccesary to address the two issues that the majority chooses to resolve it its disposition: (1) whether the language of the Disability Plan places discretion in the hands of the Plan Administrator, meaning that the panel can only review the Plan Administrator's decision for an abuse of discretion; and (2) whether the Plan Administrator was required to consider evidence that Ficalora submitted for consideration after the Plan Administrator denied Ficalora disability benefits upon reconsideration