Monita LIU

v.

STANDARD INSURANCE COMPANY, et al.

No. CV05–7176CASAJWX.

United States District Court, C.D. California.

Oct. 17, 2006.

Glenn R. Kantor, Peter S. Sessions, Kantor and Kantor, Northridge, CA, for Monita Liu.

Jeremy Sugerman, Gordon–Creed Kelley Holl & Sugerman, San Francisco, CA, Lisa A. Kaner, Markowitz Herbold Glade and Mehlhaf, Portland, OR, for Standard Insurance Company, et al.

SNYDER, District Judge.

**Proceedings:** **DEFENDANTS' REVISED MOTION FOR SUMMARY JUDGMENT** (filed September 15, 2006)

## I. INTRODUCTION

The present litigation arises from a dispute over whether plaintiff is entitled to receive disability benefits under an ERISA-governed group long-term disability policy that defendant Standard Insurance Company ("Standard") issued to plaintiff's employer, the Motion Picture Industry. Plaintiff filed suit on October 3, 2005, alleging claims for (1) denial of plan benefits, (2) equitable relief, and (3) declaratory relief.

Defendants filed a motion for summary judgment on August 7, 2006. On August 23, 2006, the parties stipulated that defendants' motion for summary judgment be taken off calendar as moot, and that defendants be granted leave to file a renewed motion for summary judgment in light of the Ninth Circuit's decision in *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir.2006). Defendants filed a renewed motion for summary judgment on September 15, 2006. Plaintiff filed an opposition on October 2, 2006.[1] On October 6, 2006, defendants filed a reply. Defendants' motion is presently before the Court.

## II. BACKGROUND

Plaintiff was employed by the Motion Picture Industry as an accounting compliance auditor. Standard is the claim administrator and insurer of the Motion Picture Industry long-term disability ("LTD") policy, Group Policy No. 608223–A ("the Policy"). Under the Policy, Standard will pay LTD benefits if the insured becomes "Disabled." The Policy provides that an insured is "Disabled" if

as a result of Sickness, Accidental Bodily Injury or Pregnancy, you are either:

a. Unable to perform with reasonable continuity the material duties of your own occupation; or

---

1. Plaintiff failed to submit a statement of genuine issues of material fact with the opposition. Defendants argue that their statement of uncontroverted facts should be admitted without controversy. It appears that plaintiff does not dispute the facts stated in defendants' statement of uncontroverted facts. Nevertheless, as discussed below, the Court concludes that there are genuine issues of material fact in dispute as to Standard's conflict of interest.

b. Unable to earn more than 80% of your indexed predisability earnings while working in your own occupation.

Decl. Of Peter S. Sessions, Ex. 1 (hereinafter "Administrative Record") at 15–16 (amended in 1997 at 25).[2]

The Policy also provides that Standard has "full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy." Under the Policy, Standard's authority includes "[t]he right to resolve all matters when a review has been requested" and to determine "[e]ligibility for insurance," "[e]ntitlement to benefits," "[t]he amount of benefits payable," and the "sufficiency and the amount of information we may reasonably require to determine" these issues. Administrative Record at 26.

On July 25, 2003, plaintiff injured her back carrying boxes of files up a flight of stairs. *Id.* at 123. Plaintiff first saw Dr. Keith Garb, the Motion Picture Industry physician, on August 19, 2003. *Id.* at 271. Plaintiff was referred to Dr. Evan Marlowe, whom she saw on September 5, 2003. Dr. Marlowe concluded that "Ms. Liu most likely has diskogenic low back pain on the right arising from employment....I recommend that she start with physical therapy and continue with the Vioxx....She declines narcotics." *Id.* at 219. A physical therapy report dated September 9, 2003, states that plaintiff "cannot do [her] usual work," but "can sit in any chair as long as [she] like[s]." *Id.* at 264.

On October 3, 2003, plaintiff saw Dr. David Ditsworth. *Id.* at 414. Dr. Ditsworth ordered a lumbar MRI. The MRI indicated "a bulging disc at L4–5." *Id.* at 142. Dr. Ditsworth noted that plaintiff "is currently undergoing a course of physical therapy." *Id.* However, plaintiff reported that this physical therapy made her feel worse. *Id.* at 131. Dr. Ditsworth wrote a note on behalf of plaintiff on October 22, 2003, stating that plaintiff was under his care for lumbar radiculopathy, and would be temporarily disabled until approximately November 16, 2003. *Id.* at 148. Plaintiff ceased work on October 24, 2003. On November 25, 2003, Dr. Distworth extended the disability until December 14, 2003. *Id.* at 159.

Plaintiff saw Dr. Boyd Flinders on November 4, 2003. Dr. Flinders' report of that date states that plaintiff's pain "has been of such intensity that it has limited her ability to work, sit, do daily activities of bending, twisting, or carrying of objects." *Id.* at 157. While the pain was "not too bad" at first, the pain got "progressively worse." *Id.* Dr. Flinders diagnosed plaintiff with lumbar disc disease L4–5, lumber stenosis L4–5, and right lumbar radiculitis. *Id.* at 155. Dr. Flinders noted that it is "quite conceivable that [plaintiff] brought to light an underlying condition, spinal stenosis and marginal nerve root compression by performing this activity [carrying file boxes up stairs at work]." *Id.* at 154. Dr. Flinders stated that plaintiff was temporarily not recommended for employment until December 1, 2003, and later extended that date to January 4, 2004. *Id.* at 158. In a report on December 18, 2003, Dr. Flinders noted that plaintiff "had epidural this past Monday....It seems a little better? ?" *Id.* at 168. In this report. Dr. Flinders confirmed that plaintiff was temporarily disabled until January 4, 2004. *Id.* In a December 23, 2003 report, Dr. Flinders noted that plaintiff "was feeling a little better, but then sat at computer 2–3

2. The Administrative Record uses the prefix "STND805–" before each page number. For ease of reference, the Court will refer only to the page number, omitting the prefix.

[hours] and noted [increased lower back pain] in middle of spine." *Id.* at 176. In this report, Dr. Flinders stated that plaintiff was temporarily not recommended for employment until January 19, 2004, on which date plaintiff could work four hours per day, with no prolonged standing or walking. *Id.*

Plaintiff saw Dr. John Chiu on December 29, 2003. On this date, plaintiff underwent an emergency epidurogram, epidural steroid injunction, and L4 provocative discogram. *Id.* at 170. Dr. Chiu noted that, after lumbar epidural steroid injections, "[l]ifting and prolonged sitting aggravated her pain a great deal. Again, a few days ago after prolonged sitting at her computer, she developed severe mid thoracic, low thoracic and low back pain associated with muscle spasm. In the past 2–3 days her theracolumbar pain has become unbearable, associated with severe muscle spasm." *Id.* at 174. Dr. Chiu diagnosed plaintiff with post-traumatic lumbar disc herniation with lumbar radiculopathy, post-traumatic thoracic strain, and acute exacerbation of the thoracolumbar disc symptoms with muscle spasm and inability to get around. *Id.* at 173. Dr. Chiu concluded that plaintiff was temporarily totally disabled until January 20, 2004. *Id.* at 172.

Plaintiff saw Dr. Thomas Clifford on January 2, 2004 for a neurological examination. Dr. Clifford's findings were "commensurate with a right L4–5 irritability." *Id.* at 429. On January 12, 2004, plaintiff underwent another lumbar MRI, which revealed "[d]egenerative changes...at L4–5 and L5–S1 with disc desiccation present" and disc protrusions. *Id.* at 434.

Plaintiff filed a claim for disability benefits on January 29, 2004. *Id.* at 121–24. Dr. Chiu signed an Attending Physician's Statement on January 25, 2004. In response to the question, "When do you anticipate the patient can return to work? State anticipated date:_____ or, Unable

to determine." *Id.* at 120. Dr. Chiu did not fill in the date, and filled out the form "Unable to determine, because of: persistant [sic] retractable lumbar symptoms." *Id.*

Standard forwarded plaintiff's medical file to an independent physician consultant, Dr. Nels Carlson. Dr. Carlson conducted a review of plaintiff's medical records on April 19, 2004. Dr. Carlson's report states that "[t]here is documentation supporting right buttock pain, although I do not find significant documentation supporting the radicular pain with neurologic deficits." *Id.* at 353. Further, the report states that while "an individual with multilevel disc degeneration and low back and buttock pain would be limited from more demanding work...[such an individual] may be capable of light work, although there may need to be some specific restrictions and/or limitations regarding prolonged walking, standing or significant lifting." *Id.* Dr. Carlson concluded that plaintiff should be capable of sedentary work. *Id.* Standard contends that the work of a compliance auditor is defined by the *Dictionary of Occupational Titles* as a sedentary occupation. *Id.* at 365.

In a May 10, 2004 memorandum, a Standard claims analyst agreed with Dr. Carlson's conclusions. The memorandum stated that "[a]s there is insufficient evidence that there are significant limitations and restrictions that would preclude the claimant from working in her sedentary occupation I recommend denial of the claim." *Id.* at 360. In a letter to plaintiff, Standard stated that "[a]lthough we do not dispute that you may continue to feel some pain or discomfort due to your condition, the current medical information in your file does not support limitations or restrictions which would prevent you from performing your own occupation of compliance auditor." *Id.* at 364.

From January 1, 2004 to August 31, 2004, Dr. Chiu filled out progress reports which stated that plaintiff should remain off-work. On January 15, 2004, Dr. Chiu noted that plaintiff "is doing much better and improving." *Id.* at 336. On February 11, 2004, Dr. Chiu's progress report stated that plaintiff had "some low back and leg pain but slowly improving," and that plaintiff could return to work on February 17, 2004 at half time. *Id.* at 339. On Febuary 25, 2004 Dr. Chiu's progress report stated that plaintiff should remain off-work until March 15, 2004. *Id.* at 342. Further progress reports extended plaintiff's date to return to work. In an April 20, 2004 progress report, Dr. Chiu stated that plaintiff "is slowly improving," but that she should remain off work until June 7, 2004. *Id.* at 455. A progress report on August 23, 2004 stated that plaintiff felt she had improved by about 60%, but plaintiff should remain off-work until September 15, 2004. *Id.* at 459.

Dr. Chiu wrote Standard a letter on September 14, 2004, stating that "this patient is unable to go back to her regular work and customary duties and will remain on temporary total disability until November 31, 2004." *Id.* at 468. On September 30, 2004, Standard informed plaintiff that Dr. Chiu's letter did not present any "new objective documentation" in support of plaintiff's disability claim. *Id.* at 371.

On October 23, 2004, plaintiff wrote a letter requesting that Standard review its denial of her claim. Plaintiff's letter stated that she was experiencing pain, numbness, and side effects from medication. *Id.* at 375–76. Standard asked Dr. Carlson to review plaintiff's file, as well as Dr. Chiu's September 14, 2004 letter and plaintiff's October 23, 2004 letter. Dr. Carlson again concluded that plaintiff was capable of sedentary work. *Id.* at 383.

Standard sent plaintiff's medical file, Dr. Chiu's and plaintiff's letters, and Dr. Carl-son's report to independent physician consultant Dr. Janette Green for review. Dr. Green issued a report on December 28, 2004, stating that "[t]he documentation does not support limitations or restrictions that would have precluded the claimant from a sedentary level occupation either at the time of her cease work date or beyond." *Id.* at 405.

Plaintiff sent additional medical documents from February 2004 to February 2005, to Standard on February 17, 2005. *Id.* at 479. Standard forwarded the additional evidence to Dr. Green, who issued a report on April 9, 2005. Dr. Green concluded that the evidence "does not support limitations or restrictions that would preclude the claimant from performing the duties of a sedentary or light level occupation on a full-time basis," provided plaintiff could change positions occasionally. *Id.* at 487. Standard informed plaintiff of Dr. Green's conclusions on May 6, 2005. *Id.* at 491–92.

## III. LEGAL STANDARD FOR SUMMARY JUDGMENT

■ Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has

contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. *See also Abromson v. American Pacific Corp.,* 114 F.3d 898, 902 (9th Cir.1997).

 In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 & n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.,* 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## IV. DISCUSSION

Defendants argue that (1) Standard's decision to deny benefits to plaintiff must be reviewed under an abuse of discretion standard, and (2) Standard's decision to deny plaintiff's claim for disability benefits was not an abuse of discretion. Mot. at 3.

 When the terms of an ERISA plan grant discretion to the administrator of the plan, the district court must review the administrator's decision for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1090 (9th Cir. 1999). To confer discretionary authority on the administrator, the ERISA plan must grant the administrator the power to construe the terms of the plan. *Abatie,* 458 F.3d at 964. Here, the Policy provides Standard "full and exclusive authority...to interpret the Group Policy" and determine eligibility for benefits. Plaintiff does not dispute that the Policy grants discretionary authority to Standard, and that therefore the abuse of discretion standard applies. *See* Opp'n at 11.

 However, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' Restatement (Second) of Trusts § 187, Comment d (1959)." *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. A conflict of interest exists where an insurer acts as both the plan administrator and the funding source for benefits. *Abatie,* 458 F.3d at 965. Plaintiff argues that such a conflict of interest exists here because Standard both funds the Policy and acts as plan administrator. Opp'n at 12.

In *Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1323 (9th Cir.1995), the Ninth Circuit held that, if a plan participant could show "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary," then the burden shifted to the

administrator to prove that the conflict of interest did not affect the administrator's decision to deny benefits. If the administrator failed to carry that burden, a district court would review the decision de novo. *Id.*

In *Abatie,* the Ninth Circuit overruled the *Atwood* approach to conflicts of interest. Instead, the Ninth Circuit held that the abuse of discretion analysis must be "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Abatie,* 458 F.3d at 967. As the court explained,

> [a] district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage. An egregious conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might. . . . A straightforward abuse of discretion analysis allows a court to tailor its review to all the circumstances before it. . . . The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence, *Booton v. Lockheed Med. Benefit Plan,* 110 F.3d 1461, 1463–64 (9th Cir.1997); fails to credit a claimant's reliable evidence, *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions

against the weight of evidence in the record.

*Id.* at 968 (some citations omitted).

 In deciding how to weigh a structural conflict of interest, the district court may consider evidence outside of the administrative record. *Id.* at 970. "The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise." *Id.* The administrator may "bring forth affirmative evidence that any conflict did not influence its decisionmaking process," such as evidence that "it used truly independent medical examiners or a neutral, independent review process; that its employees do not have incentives to deny claims; that its interpretations of the plan have been consistent among patients; or that it has minimized any potential financial gain through structure of its business." *Id.* at 969 n. 7.

Plaintiff argues that the Court should consider the following evidence in weighing the extent of Standard's conflict of interest: (1) Standard "ignored aspects of plaintiff's disability (pain and side effects from medication);" (2) Standard "failed to adequately investigate plaintiff's claim" by not contacting Dr. Chiu; and (3) Standard "failed to credit plaintiff's reliable evidence (in the form of MRIs, nerve conduction studies, and the reports of plaintiff's physician)" and instead accepted the reports of two physicians who never examined plaintiff, and who are less qualified to evaluate plaintiff's condition than plaintiffs' physicians. Opp'n at 18.

Defendants argue that (1) Standard did consider plaintiff's subjective complaints of pain, but concluded that this would

not prevent plaintiff from performing her occupation; (2) plaintiff's "physicians' records do not document complaints of significant side-effects or the physicians' observations of such effects," Reply at 5; and (3) Standard was not required to accept the opinions of plaintiff's treating physicians rather than reliable evidence in the reports of the two independent physician consultants, *id.* at 6.

 The need to weigh the extent of Standard's conflict of interest, including the need to make credibility determinations as to plaintiff's proffered evidence, precludes the granting of summary judgment in Standard's favor. Plaintiff has presented some evidence that Standard failed to adequately investigate plaintiff's claim, and that Standard failed to credit plaintiff's reliable evidence. While defendants are correct that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician," *Nord*, 538 U.S. at 834, 123 S.Ct. 1965, "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* Thus it appears that genuine issues of material fact exist which the Court must resolve in order to determine what "level of skepticism" is warranted in this case, in light of Standard's structural conflict of interest.

## V. CONCLUSION

In accordance with the foregoing, the Court DENIES defendants' motion for summary judgment. The Court grants leave to conduct limited depositions of Standard's two independent physician consultants, Dr. Carlson and Dr. Green. The depositions are limited to two (2) hours, and must be conducted within the next thirty (30) days. The depositions are to be limited to the issue of Standard's conflict of interest.

The Court directs the parties to file supplemental briefs addressing how the Court should weigh Standard's conflict of interest. Defendant's supplemental brief is due on December 1, 2006. Plaintiff's supplemental brief is due on December 8, 2006. The hearing on this issue is set for December 18, 2006, at 10:00 a.m.

IT IS SO ORDERED.