Peggy HAWKINS–DEAN, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE
CO., Defendants.

No. 2:03–cv–01115–ER–VBKx.

United States District Court,
C.D. California.

July 2, 2007.

Charles J. Fleishman, Charles J. Fleishman Law Offices, Beverly Hills, CA, for Plaintiff.

Robert K. Renner, Sara A. Maunder, Barger and Wolen LLP, Irvine, CA, Barclay D. Edmundson, Orrick Herrington & Sutcliffe, Los Angeles, CA, for Defendants.

## MEMORANDUM DECISION

EDWARD RAFEEDIE, Senior District Judge.

This matter came before the Court on remand from the Ninth Circuit to apply the standards articulated in *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir.2006) (en banc). Having considered the papers filed in connection with this matter, the Court has reached the following conclusions:

## I. Facts and Procedural History

This is the third action relating to these parties, facts, and this ERISA ("Employee Retirements Income Security Act of 1974," 29 U.S.C. § 1001) claim. In 1999, Plaintiff Peggy Hawkins–Dean was diagnosed by her treating physician with fibromyalgia, a painful muscle condition that left her extremely fatigued and unable to work. In 1999, Plaintiff filed a claim for long-term disability ("LTD") benefits provided by her former employer, Robert Half International. Soon thereafter, in 2000, Defendant Metropolitan Life Insurance Company ("MetLife") denied Plaintiff's claim.

In October of 2001, Plaintiff brought an action challenging Defendant's denial of her LTD benefits. The Court eventually granted summary judgment in Plaintiff's favor on the issue of liability (MetLife had essentially conceded this point by placing Plaintiff on "pay status" shortly before the motion was heard), but it remanded the case to MetLife to determine the proper calculation of benefits. However, Plaintiff and MetLife disagreed whether Plaintiff's receipt of stock options in the year preceding her disability should be considered as part of her "Basic Monthly Earnings" (the term used by her ERISA plan to determine the calculation of benefits) and therefore used in the calculation of the monthly disability benefits owed to her. Plaintiff sought a monthly benefit based on the total earnings reported on her 1998 W–2 form, or $6,118.75 in monthly benefits, which included stock options. On the other hand, MetLife, as the administrator, ruled that it was inappropriate to calculate stock options as part of her total earnings, and sought to pay Plaintiff $152.50 in monthly benefits. Plaintiff appealed that decision to this court.

Following *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1322–23 (9th Cir.1995), the Court reviewed MetLife's decision with a deferential abuse of discretion standard of review, and it held that MetLife did not abuse its discretion in calculating the monthly benefits. However, the Ninth Circuit found the proper standard of review was de novo given that MetLife was affected by self-interest. Furthermore, the Ninth Circuit concluded that Plaintiff was entitled to monthly benefits based on her total earnings, including the value of her stock options, as reported on her W–2 form. MetLife sought certiorari.

As MetLife's petition was pending, an en banc panel of the Ninth Circuit overruled *Atwood* and established a new protocol for

review of ERISA cases where a conflict of interest may have influenced the plan administrator's decision. *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955 (9th Cir.2006) (en banc). On November 27, 2006, the Supreme Court granted certiorari in this case, vacated the Ninth Circuit's ruling, and remanded for reconsideration in light of *Abatie.* The Ninth Circuit then vacated its judgment and remanded this case to the district court to apply the guidelines set forth in *Abatie.*

## II. ERISA claims following *Abatie*

The Supreme Court has held that a court should review a denial of benefits under an ERISA plan de novo "unless the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Plaintiff concedes that her policy clearly and explicitly grants discretionary authority to determine eligibility for coverage and entitlement to benefits to MetLife. Therefore, according to *Firestone Tire,* the standard of review this Court must apply is abuse of discretion.

However, *Abatie* states that the courts should not ignore inherent structural conflicts of interest, such as when an insurer both administers and funds an ERISA plan. 458 F.3d at 965. Rather, the "plaintiffs will have the benefit of an abuse of discretion review that always considers the inherent conflict when a plan administrator is also the fiduciary, even in the absence of 'smoking gun' evidence of conflict." *Id.* at 969. Therefore, the degree of deference given by the court to a fiduciary's decision must take into account the nature, extent, and effect of any conflict of interest and the impact that conflict may have had on its decision.

## A. The *Abatie* Standard of Review for a Conflicted Fiduciary

Here, MetLife has an incentive to pay Plaintiff as little in benefits as possible in order to maximize its profits. Therefore, the Court should review the administrator's denial of benefits under an abuse of discretion standard but take into consideration the inherent conflict that exists since MetLife is both the Plan's administrator and source of funding. In light of the conflict of interest, the Court will apply a less deferential abuse of discretion standard of review.

## B. Review of MetLife's Interpretation of the Certificate of Insurance

■ The crucial issue is whether MetLife abused its discretion by leaving out stock options when calculating Plaintiffs monthly benefits. The relevant language for the claim's Summary Plan Description ("SPD") and Certificate of Insurance ("COI") defines "Monthly Benefits" for employees with long-term disabilities as follows: "(2) 60% of Basic Monthly Earnings minus Other Income Benefits." The COI also provides that "Basic Monthly Earnings," in relevant part means: "the greater of (1) your earnings, including overtime and bonuses, for the prior Calendar Year as reported by the employer on Wage Form W–2, averaged over the number of months [of] such W–2 earnings; and (2) your base monthly salary."

Here, it is ambiguous whether the terms "bonus" or "earnings," as used in the COI, necessarily include the receipt of stock options or whether MetLife, as the authors of the ERISA plan, intended to include stock options when calculating the amount of a disability benefit. The SPD and COI are silent on the issue of whether the value of stock options should be included in the calculation of monthly benefits. However,

the COI does state that the figures reported in Plaintiff's W–2 should be referenced when calculating her Basic Monthly Earnings. Furthermore, Plaintiff's W–2 refers to the stock options as part of the her total earnings, yet MetLife asserts that stock options are not part of her income.

■ The Court, applying a less deferential abuse of discretion review, believes that because of this ambiguity, it should apply the doctrine of *contra proferentem* and interpret any ambiguities in favor of the non-drafting party. *See Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 538–40 (9th Cir.1990). *Contra proferentem,* which is recognized by federal common law and the law of every state, holds that "if, after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured will be adopted." *Id.* As a result, applying the doctrine of *contra proferentem,* the Court will interpret the ambiguity in favor of the Plaintiff and rule that the terms "bonus" or "earnings" include the receipt of stock options.

## C. Calculation of Monthly Benefits

Having found that MetLife abused its discretion by not including stock options when calculating Plaintiff's benefit-amount determination, the Court remands this matter to MetLife to pay benefits in accordance with this Memorandum Decision. Instead of using the figure that it previously used to determine Plaintiff's monthly benefits, MetLife shall calculate Plaintiff's benefits, pursuant to Plaintiff's governing COI, using the yearly earnings (including

stock options) as reported on Plaintiff's 1998 Wage Form W–2, or $147,297.97.[1]

Plaintiff is also entitled to unpaid benefits that have accrued between July 1999 and the date of entry of Judgment. Plaintiff was entitled to begin receiving the benefits in July 1999, 90 days after she stopped working because of her disability. Thus, as of June 2007, MetLife owes Plaintiff benefits that have not been properly paid for 95 months. Since putting Plaintiff on "pay status," MetLife has paid Plaintiff disability benefits of $152.50 per month; therefore, it is entitled to a credit for the amount it has already paid.

## D. Prejudgment Interest

■ Plaintiff also seeks an award of prejudgment interest on the amount of unpaid benefits that have accrued between July 1999 and the date of entry of Judgment. In an ERISA action, an award of prejudgment interest is committed to the sound discretion of the District Court. *Landwehr v. DuPree,* 72 F.3d 726, 739 (9th Cir.1995). It is an element of compensation, not a penalty, and is primarily concerned with making an aggrieved party whole. *Dishman v. UNUM Life Ins. Co. of America,* 269 F.3d 974, 988 (9th Cir. 2001). Over the past eight years, Plaintiff has been denied the correct amount of disability payments to which she was entitled.

■ Under federal law, the calculation of the amount—or percentage—of prejudgment interest is left to the sound discretion of the district court. *Fritcher v. Health Care Service Corp.,* 301 F.3d 811, 820 (7th Cir.2002). The Court finds that the interest rate prescribed in 28 U.S.C. § 1961 will appropriately compensate Plaintiff for the denial of benefits.[2]

---

1. The figure $147,279.97 comes from Box 1 in the 1998 W–2 form entitled "Wages, tips, other compensation" rather than the figure in Box 5, $151,854, which comes from section in the W–2 form entitled "Medicare, wages, and tips" that the Plaintiff used when calculating her monthly benefits in her brief.

2. 28 U.S.C. § 1961 calculates interest at a rate equal to the weekly average 1–year con-

The Court does not believe it is appropriate to deviate from the Treasury bill, as advocated by Plaintiff. *See Blankenship v. Liberty Life Assurance Co.,* 486 F.3d 620 (9th Cir.2007). In *Blankenship,* the Ninth Circuit held that prejudgment interest on unpaid benefits owed to an ERISA plan beneficiary may deviate from the Treasury bill rate if there is evidence that the beneficiary had to replace the missing money with other funds, thereby causing a loss to the beneficiary. *Id.*

Here, Plaintiff has failed to make a prima facie showing of causation as to why the Court should deviate from the standard Treasury bill rate. Plaintiff claims that she had to mortgage her house in order to compensate for the missing funds caused by MetLife's miscalculations. However, Plaintiff has not provided sufficient evidence that she, as the beneficiary, had to replace the unpaid benefits with other funds, thereby causing a loss to her. Furthermore, Plaintiff has not alleged any facts regarding the mortgage on her house, such as the date, rate of interest, or the amount the house was mortgaged for. Given the totality of the circumstances, including the Plaintiff's arguments, the Court finds that the statutory rate of prejudgment interest is appropriate in this case.

## III. Conclusion

In conclusion, this Court finds that Defendant MetLife abused its discretion by withholding stock options when calculating Plaintiff's monthly benefits. As a result, the Court remands this matter to MetLife to calculate and pay future benefits in accordance with this Memorandum Decision, so long as Plaintiff remains eligible. In addition, the Court awards Plaintiff unpaid benefits that have accrued between

stant maturity Treasury yield, as published by the Board of Governors of the Federal Re-

July 1999 and the date of entry of Judgment, together with prejudgment interest pursuant to 28 U.S.C. § 1961 on each unpaid benefit from the date it became due to the date of entry of Judgment.

MetLife shall calculate Plaintiff's monthly benefits and pay all unpaid benefits and interest in accordance with this Memorandum Decision not later than 30 days from the date of entry of Judgment.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve, by United States mail or by telefax or by email, copies of this Order on counsel in this matter.